UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JERRY ANDERSON,

          **Plaintiff,**                    **CIVIL ACTION NO. 17-cv-12854**

      **v.**                      **DISTRICT JUDGE GEORGE CARAM STEEH**

**WILLIAM BORGERDING** *et al.*,      **MAGISTRATE JUDGE MONA K. MAJZOUB**

          **Defendants.**

_____/


**REPORT AND RECOMMENDATION**

Plaintiff Jerry Anderson, currently incarcerated by the Michigan Department of Corrections (MDOC), and proceeding *pro se*, filed this civil rights action on August 28, 2017, pursuant to 42 U.S.C. § 1983, alleging violations of his rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution.  (Docket no. 1.)  This matter comes before the court on four Motions to Dismiss filed by Defendants E'Coe Hill, N.P., and Tana Hill, N.P. (docket no. 22), Kristen Maxsom (docket no. 23), Rashed Bashir, M.D. (docket no. 33), and William Borgerding (docket no. 45).  Plaintiff filed a Response to the Motions filed by Defendants E'Coe Hill, Tana Hill, and Maxsom (docket no. 41), to which Defendants E'Coe Hill, Tana Hill, and Bashir replied (docket no. 42).  Also before the court are three motions filed by Plaintiff:  (1) Motion to Waive $4.00 Partial Filing Fee (docket no. 10); (2) Motion That Plaintiff Be Supplied All Documents Provided to Defendant's [sic] by the MDOC (docket no. 25); and (3) Motion to Stay Response to Motion to Dismiss Pending Discovery for Information to Assist in Response (docket no. 40).  Defendants have not responded to Plaintiff's Motions.  This action has been referred to the undersigned for all pretrial purposes.  (Docket no. 5.)  The

undersigned has reviewed the pleadings, dispenses with oral argument on the motion pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.       RECOMMENDATION

For the reasons that follow, it is recommended that Defendants' Motions to Dismiss (docket nos. 22, 23, 33, 45) be **GRANTED** with regard to the dismissal of Plaintiff's claims and **DENIED** with regard to Defendants' requests for costs and attorney fees.  In light of this recommendation, it is further recommended Plaintiff's Motions (docket nos. 10, 25, 40) be **DENIED** as moot and that Plaintiff's Complaint be dismissed in its entirety, without prejudice.

## II.      REPORT

### A.       Background

The allegations giving rise to Plaintiff's claims in this matter relate to Plaintiff's transfer from the Lakeland Correctional Facility (LCF), a level two housing facility, to the Duane Waters Health Center (DWH), a level five (maximum custody) facility, and the health care that he received at DWH.  (Docket no. 1.)  Plaintiff alleges that on May 25, 2017, Defendants Maxsom and E'Coe Hill of LCF informed him that he was being sent to DWH for treatment at the instruction of Defendant Borgerding.  (*Id*. ¶ 8.)  The next day, at DWH, Dr. Patricia Schmidt and Defendant Bashir allegedly informed Plaintiff that Borgerding sent Plaintiff to DWH to complete his oral antibiotics and that once they were completed, Plaintiff would be returned to LCF.  (*Id*. ¶ 10.)  Plaintiff also alleges that Defendant Bashir told him that once he took his medication for thirty consecutive days, he would place Plaintiff up for release; sometime later, Defendant Bashir allegedly told Plaintiff that he did not see a need for Plaintiff to remain at DWH, but Defendant Borgerding had to be the one to release Plaintiff from DWH.  (*Id*. ¶ 15.)  Additionally, Plaintiff

alleges that Defendant Tana Hill told him that the medical providers at DWH agreed that he did not need to be at DWH, but Defendants Borgerding, Maxsom, and E'Coe Hill said that they could not treat Plaintiff at LCF. (*Id*. ¶ 21.) According to Plaintiff, Defendant Tana Hill said that she could not understand Plaintiff's continued placement at DWH. (*Id*.)

Plaintiff claims that Defendants Borgerding, Maxsom, and E'Coe Hill violated his Fourteenth Amendment rights when they ordered that Plaintiff be transferred from LCF to DWH and thereby effectively increased Plaintiff's custody level by three levels without an administrative hearing. (Docket no. 1 ¶¶ 22, 26.) Plaintiff also claims that by forcing Plaintiff to stay at DWH to take his medications, Defendant Bashir subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment because Plaintiff did not get daily outdoor yard privileges, daily showers, a work assignment to support his needs, full store privileges, or access to the weight pit while he was incarcerated at DWH. (*Id*. ¶ 23.) Plaintiff claims that Defendants Bashir and Tana Hill's failure to request Plaintiff's release from DWH also constitutes cruel and unusual punishment. (*Id*. ¶ 27.) Plaintiff further claims that Defendants Borgerding, Bashir, and Tana Hill denied him medical care and were deliberately indifferent to his medical needs in violation of the Eighth Amendment by refusing to perform or order heart surgery for Plaintiff and refusing to amputate Plaintiff's leg. (*Id*. ¶¶ 24, 28.) Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief. (*Id*. ¶ 29.)

## B.    Legal Standard

Defendants E'Coe Hill, Tana Hill, and Bashir bring their Motions to Dismiss as unenumerated Federal Rule of Civil Procedure 12(b) motions. (Docket nos. 22, 33.) Defendants Maxsom and Borgerding move to dismiss pursuant to Rule 12(b)(6). (Docket nos. 23, 45.)

Courts have diverged regarding the proper vehicle for a motion to dismiss based on a failure to exhaust administrative remedies. While the Sixth Circuit has not affirmatively addressed this issue, two decisions from courts in this district reflect and provide hearty discussions regarding the different viewpoints. In *Twohig v. Riley*, No. 12-CV-11832, 2013 WL 3773365, at *3-4 (E.D. Mich. July 17, 2013), the court concluded that the most logical approach is to treat a motion to dismiss for failure to exhaust as an unenumerated Rule 12(b) motion. Since *Twohig*, a number of courts in this district have followed this approach and/or explicitly found it to be appropriate. *See Burley v. Abdellatif*, No. 16-cv-12256, 2017 WL 3528927, at *5 (E.D. Mich. July 18, 2017), *report and recommendation adopted sub nom. Burley v. Abedellatif*, No. 16-12256, 2017 WL 3485875 (E.D. Mich. Aug. 15, 2017); *Perry v. Cousins*, No. 15-13930, 2016 WL 4720420, at *2 (E.D. Mich. Sept. 9, 2016); *Mann v. United States*, No. 14-13439, 2016 WL 1253267, at *1 (E.D. Mich. Mar. 31, 2016); *Arnold v. Rivard*, No. 15-10608, 2016 WL 878330, at *1 n.1 (E.D. Mich. Mar. 8, 2016); *Threet v. Phillips*, No. 14-cv-13345, 2016 WL 374121, at *3 (E.D. Mich. Feb. 1, 2016).

In *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786-88 (E.D. Mich. 2016), however, the court found that the unenumerated Rule 12(b) motion approach is not necessarily proper and concluded that the affirmative defense of exhaustion may be raised by a motion for summary judgment. Notably, both the *Twohig* and *Anderson* courts pointed out that "Rule 12(b)(6) does not appear to be the proper vehicle to address an exhaustion defense under the PLRA, because failure to exhaust is not a pleading requirement." *Anderson*, 175 F. Supp. 3d at 787 (citing *Twohig*, 2013 WL 3773365, at *3). But where, as here, "the plaintiff includes allegations in his complaint that permit adjudication of an exhaustion defense, a defendant may resort to a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Rembisz v. Lew*, 590 F. App'x 501, 504

4

(6th Cir. 2014) (acknowledging that the exhaustion defense may be "susceptible to resolution on a motion to dismiss if a plaintiff affirmatively pleads himself out of court") (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))).

Nevertheless, "[w]hether the Court treats this as a motion for summary judgment, [a Rule 12(b)(6) motion,] or an unenumerated 12(b) motion, the result will be the same: if granted, the dismissal will be without prejudice, and it will not count as a "strike" under 28 U.S.C. § 1915(g). *Neal v. Raddatz*, No. 09-13169, 2012 WL 488827, at *3 (E.D. Mich. Jan. 12, 2012), *report and recommendation adopted*, No. 09-13169, 2012 WL 488702 (E.D. Mich. Feb. 15, 2012).

### C.    Analysis

Defendants assert that dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act.  (Docket nos. 22, 23, 33, 45.) They contend that Plaintiff filed two grievances related to the events giving rise to his Complaint, which were not exhausted when Plaintiff filed his Complaint.

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action.  Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  A prisoner "may not exhaust administrative remedies during the pendency of

the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Therefore, even if a prisoner attempted to process a claim through the MDOC's grievance procedure, his complaint must be dismissed if it was filed before the administrative process was complete. *Id.*

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 regarding prisoner grievances[1] requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC P.D. 03.02.130(V). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due." MDOC P.D. 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due." MDOC P.D. 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been "filed as a grievance through all three steps of the grievance process in compliance with [the] policy." MDOC P.D. 03.02.130(B). "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." MDOC P.D. 03.02.130(S). Although the 120-day deadline is not mandatory, "some courts view the time frame as a deadline for the MDOC to respond to a Step III grievance." *Muttscheler v. Martin*, No. 1:12cv1221, 2013 WL 3730095, at

---

[1] Defendants E'Coe Hill, Tana Hill, and Bashir attached a copy of MDOC Policy Directive 03.02.130 to their Motions. (Docket nos. 22-2, 33-2.)

*5 (W.D. Mich. July 15, 2013) (citing *Sims v. Rewerts*, No. 07-12646, 2008 WL 2224132, at *5 (E.D. Mich. May 29, 2008)).

To support their Motions, Defendants have submitted Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued to Step III of the grievance process between May 2009 and November 1, 2017, the date the report was generated.  (Docket no. 22-1.) The Report indicates that Plaintiff filed two grievances in 2017:  (1) Grievance no. RGC-17-05-0461-12Z, received by the MDOC at Step I of the grievance process on May 31, 2017, and at Step III of the grievance process on August 2, 2017; and (2) Grievance no. RGC-17-07-0684-12D, received by the MDOC at Step I on July 27, 2017, and at Step III on October 9, 2017. Indeed, Plaintiff pleads facts regarding these grievances in his Complaint, and he attached them thereto.  Specifically, Plaintiff filed Grievance no. RGC-17-05-0461-12Z against Defendant Borgerding for forcibly housing Plaintiff at DWH and forcing him to take intravenous antibiotics, and he filed Grievance no. RGC-17-07-0684-12D against Defendant Tana Hill for refusing to place Plaintiff up for release from DWH.  (Docket no. 1 at 2, 3, 10, 27.) Nevertheless, Plaintiff's Step III Grievance Report also indicates that neither of these grievances had been resolved as of November 1, 2017. (Docket no. 22-1 at 1.)

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies because he failed to complete the grievance process before filing his Complaint in this matter, that is, he filed his Complaint before receiving the Step III grievance responses.  (Docket no. 22 at 15.)  Plaintiff responds that even though he did not have the Step III responses at the time he filed his Complaint, the Step III Response for Grievance no. RGC-17-05-0461-12Z violates MDOC Policy Directive 03.02.130(S) because it wasn't returned to Plaintiff until November 17, 2017, more than 120 days after Plaintiff filed the grievance.  (Docket no. 41 at 3.)  Defendants

E'Coe Hill, Tana Hill, and Bashir reply that whether the MDOC completed the grievance process within 120 days is irrelevant here, because "[t]he grievance process is not complete (and Plaintiff's administrative remedies are not exhausted) until either 1) he received a Step III response or 2) the 120-day grievance response period expired."  (Docket no. 42 at 1-2 (citing *Fulkerson v. Washington*, No. 1:16-cv-537, 2016 WL 7337157 at *3 (W.D. Mich. Nov. 3, 2016) and *Sparks v. Hutchinson*, No. 16-10752, 2017 WL 359607 at *6 (E.D. Mich. Jan. 4, 2017)).

Indeed, while it appears based on the language of the MDOC policies alone that Plaintiff filed a Step III grievance which should serve to exhaust his administrative remedies, *see* MDOC P.D. 03.02.130(B), courts have found that a prisoner does not complete the administrative review process and exhaust his administrative remedies until after he receives a Step III response or after the 120-day deadline has passed.  *See Muttscheler, Fulkerson,* and *Sparks, supra*.  Also, in *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), the Sixth Circuit held that the prisoner plaintiff had properly exhausted his administrative remedies because he "invoked one complete round of the [MDOC's] grievance procedures and received merits-based responses at each step." *Id.* at 326.  The prisoner plaintiff in *Reed-Bey* filed his complaint on March 1, 2006 but did not receive a response to his Step III grievance appeal until March 20, 2006, after his complaint was filed.  The court noted that the Step III response was completed two months after the deadline for resolving the appeal had passed.  *Id*. at 323.  The court does not state what the deadline was for filing a Step III response; however, it is clear that the plaintiff in *Reed-Bey* filed his complaint after the Step III response deadline passed but before he received the Step III response.

Plaintiff in the instant case filed his Complaint on August 28, 2017, approximately 95 days after he filed Grievance no. RGC-17-05-0461-12Z at Step I of the grievance process on May 25, 2017, and only 33 days after he filed Grievance no. RGC-17-07-0684-12D on July 26,

2017.  Assuming the 120-day time frame is a deadline, then unlike the complaint in *Reed-Bey*,

the instant Complaint was filed before Plaintiff received the Step III responses *and* before the

120-day deadline had expired.  In fact, Plaintiff filed his Complaint even before he filed his Step

III appeal of Grievance no. RGC-17-07-0684-12D on October 9, 2017.   The undersigned

concludes that Plaintiff filed his Complaint prematurely.  While Plaintiff asserts that he has since

received the Step III responses, and his administrative remedies are now exhausted (*see* docket

no. 41 at 5, 6), this does not cure his failure to exhaust before filing suit under *Freeman, supra*.

*See also Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002).  The court should find that

Plaintiff failed to exhaust his administrative remedies and grant Defendants' Motions to Dismiss.

Additionally, as noted above, Plaintiff has filed a Motion to Waive $4.00 Partial Filing

Fee, a Motion That Plaintiff Be Supplied All Documents Provided to Defendant's [sic] by the

MDOC, and a Motion to Stay Response to Motion to Dismiss Pending Discovery for

Information to Assist in Response, all of which remain outstanding before the court.  (Docket

nos. 10, 25, 40.)  These motions are moot for a variety of reasons.  Most importantly, no amount

of discovery will change the result that Plaintiff's claims are barred by a failure to exhaust his

administrative remedies under the PLRA.  Accordingly, Plaintiff's outstanding motions should

be denied as moot, and Plaintiff's Complaint should be dismissed in its entirety, without

prejudice.  *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004) (a dismissal for

failure to exhaust administrative remedies under the PLRA is without prejudice).

### D.     Conclusion

For the reasons stated herein, it is recommended that the court **GRANT** Defendants'

Motions to Dismiss (docket no. 22, 23, 33, 45) insofar as they seek dismissal of Plaintiff's

claims, and **DENY** Defendants' Motions insofar as they request costs and attorney fees.  In light

of this recommendation, it is further recommended the court **DENY** Plaintiff's Motions (docket nos. 10, 25, 40) as moot and dismiss Plaintiff's Complaint in its entirety, without prejudice.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  July 2, 2018                        s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  July 2, 2018                    s/ Leanne Hosking
                                        Case Manager